**Egon SIMILES, Appellant,**

v.

**Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.**

**No. 95–906.**

United States Court of Veterans Appeals.

March 13, 1998.

Barton F. Stichman and Stephanie Forester, Washington, DC, were on the pleadings for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarty, Acting Deputy Assistant General Counsel; and Michele Russell Katina, Washington, DC, were on the pleadings for appellee.

Before KRAMER, FARLEY, and HOLDAWAY, Judges.

KRAMER, Judge:

The appellant appealed a January 20, 1995, decision of the Board of Veterans' Appeals (Board or BVA) denying reimbursement or payment of the costs of private hospital care that he incurred in March 1990 as a consequence of not being provided medical treatment at a VA facility. Subsequently, the parties filed a joint motion to dismiss based on a settlement agreement. On February 12, 1997, the Court granted the joint motion. Issues with respect to the appellant's application for attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) are the subject of this opinion. For the reasons set forth below, the Court will grant the EAJA application in part and deny it in part.

## I. RELEVANT BACKGROUND

During the merits litigation of this case, the appellant was represented on a pro bono basis by Mary Ellen McCarthy, who was Executive Director of the Nevada Indian Rural Legal Services, Inc. (NIRLS) at the time the merits litigation reached settlement. Prior to the settlement, Ms. McCarthy consulted with Ronald Abrams and Barton F. Stichman, attorneys with the National Veterans Legal Services Program (NVLSP), regarding certain substantive issues. Mr. Stichman also filed an amicus curiae brief on behalf of the American Legion during the merits litigation. On February 12, 1997, the Court granted the parties' joint motion to dismiss the case, which was based upon the Secretary's agreement to pay the appellant certain monies claimed by the appellant,

Joint Motion at 1, and issued judgment and mandate. The joint motion specifically stated, "This is not a confession of error[ ] by the Secretary." *Id.* at 2.

On February 28, 1997, Ms. McCarthy moved to withdraw and substitute Mr. Stichman as counsel for the appellant on the grounds that she had recently accepted government employment and could no longer represent the appellant because of the resulting conflict of interest. The motion, which was granted on March 4, 1997, included a letter of consent from the appellant and a notice of appearance by Mr. Stichman as the appellant's new counsel. That letter states: "Effective February 28, 1997, I hereby consent to the withdrawal of MARY ELLEN McCARTHY, ESQ., [NIRLS], as my attorney in this matter. I also consent to the substitution of BARTON F. STICHMAN, ESQ., [NVLSP], ... as my new legal representative in this matter."

On March 14, 1997, 30 days after the motion to dismiss was granted and judgment and mandate were issued, Mr. Stichman filed an EAJA application on behalf of the appellant. The application is for $17,826.42, consisting of: $15,792.18 based upon 124.25 hours (at $126.75/hour) for Ms. McCarthy's work and $43.49 for her expenses (work 1); $317.85 based upon 2.5 hours (at $127.14/hour) spent by NVLSP attorneys consulting with Ms. McCarthy during the substantive litigation (work 2); $572.13 based upon 4.5 hours (at $127.14/hour) spent by NVLSP attorneys prior to February 28, 1997, preparing the EAJA application (work 3); and $1,144.26 based upon 9 hours (at $127.14/hour) spent by NVLSP attorneys on or after February 28, 1997, preparing the EAJA application (work 4). Application at 4–5. Subsequently, the Secretary filed a response, the appellant filed a reply, and the Secretary filed a response to the appellant's reply.

The Secretary's response averred that Ms. McCarthy's employer, NIRLS, had been dissolved. This assertion was based upon one telephone call to the (Nevada) Legal Services Statewide Advocacy office which formerly supported NIRLS. Attachment to Secretary's Response at 2. In response the appellant has filed sworn declarations by Ms. McCarthy, Mr. Stichman, and Russell S. Nash (current president of the board of directors of NIRLS) that, while the offices of NIRLS have been closed due to lack of funds, NIRLS has not been dissolved and is involved in fund raising in attempts to reopen its doors. The affidavits also state that except as to hours involved in filing the EAJA application and two and one half hours of NVLSP consultation work on the main case, any award (representing Ms. McCarthy's work and expenses) would be turned over to NIRLS under a previously signed fee agreement that exists but is not of record. Reply to Appellee's Response to Appellant's Application for Attorney's Fees and Expenses at Exhibits A–C. The Secretary's response to the appellant's reply does not take issue with the appellant's assertions of fact.

On December 10, 1997, this case was stayed pending the outcome in *McNeely v. Gober,* 11 Vet.App. 191, No. 95–1000, 1997 WL 908357 (Dec. 30, 1997).

## II. EAJA LAW

The award of attorney fees to an eligible litigant is governed by 28 U.S.C. § 2412(d)(1) which states:

(A) ... [A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that *special circumstances make an award unjust.*

(B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows [ (1) ] that the party is a prevailing party and [ (2) ] is eligible to receive an award under this subsection, and [ (3) ] the amount sought, including an itemized statement from any attorney ... representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. [ (4) ] The party shall also allege that the position of

the United States was not substantially justified.

*Id.* (emphasis added).

As to requirement 1, a showing that an appellant is a "prevailing party" is made by asserting such status and by demonstrating how it was attained—that is, that the appellant had achieved "some of the benefit sought in bringing suit." *Bazalo v. Brown,* 9 Vet. App. 304, 309 (1996) (en banc) (*quoting Shalala v. Schaefer,* 509 U.S. 292, 302–03, 113 S.Ct. 2625, 2632, 125 L.Ed.2d 239 (1993)); *see also Stillwell v. Brown,* 6 Vet.App. 291, 300 (1994). As to requirement 2, a showing that an appellant is a party eligible for an award under EAJA means a statement that the appellant's net worth was less than $2,000,-000 at the time the appeal to the Court was filed (28 U.S.C. § 2412(d)(2)(B)), or, alternatively, the referencing of a favorable in forma pauperis ruling. *See Bazalo,* 9 Vet.App. at 309. Although the appellant must *show* that he is a prevailing party and that he is eligible to receive an award, as to requirement 4, he need only *allege* that the government's position is not substantially justified. *See id.* at 310. The Court in *Bazalo* also held that EAJA requirements 1–4 are jurisdictional. *See id.* at 308 (*no additional analysis relating to requirement 3 was provided*). Once a proper application has been made, "timely pleadings addressing each of the requirements of EAJA may be amended or supplemented as deemed necessary by the Court or the parties." *Id.* at 310.

In *Shaw v. Gober,* 10 Vet.App. 498, 506 (1997), the Court held that, because an EAJA claim belongs to the appellant, control of an EAJA litigation may not be ceded to an attorney, though ownership of an EAJA award can be. In the recent decision in *McNeely,* the Court held that an attorney who has not filed an appearance on behalf of an appellant in full compliance with Rule 46(d)(1) of this Court's Rules of Practice and Procedure cannot file a valid EAJA application. *See* U.S. Vet.App. R. 46(d)(1); *McNeely,* 11 Vet.App. at 191, slip op. at 2, 1997 WL 908357. This follows from the principle that, in litigation, an attorney's actions are relevant only insofar as they are on behalf of a client represented by that attorney.

## III. ANALYSIS

Judgment and mandate issued on February 12, 1997, when the joint motion was granted. *See Stillwell,* 6 Vet.App. at 300 (when a case is concluded by consent of both parties, judgment and mandate enter immediately). The appellant's EAJA application was filed on March 14, 1997, within 30 days after the entry of final judgment. *See* 28 U.S.C. § 2412(d)(1)(B). Thus, the appellant's application was timely.

In response to the EAJA application, the Secretary states that he does not contest the following: (1) that the "[a]ppellant is a 'prevailing party,' pursuant to 28 U.S.C. § 2412(d)(2)(B)"; (2) that the "[a]ppellant's net worth does not exceed $2,000,000.00"; and (3) that "[t]he Secretary's position was not 'substantially justified'." Response (Resp.) at 1. However, "[l]ack of jurisdiction 'cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation'." *Johnson v. Brown,* 7 Vet.App. 25, 27 (1994) (*quoting Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974)). Therefore, the Court must satisfy itself that it has jurisdiction before proceeding to the merits of the appellant's EAJA application.

The Court concludes that the jurisdictional requirements are satisfied. As to requirement 1, that the appellant show that he was able to succeed in achieving some of the benefit sought in bringing the suit, the appellant's application shows that the appellant's appeal led to the settlement agreement that awarded him a portion of the medical expenses for which he was seeking reimbursement. *See Bazalo,* 9 Vet.App. at 309. As to requirement 2, that the appellant show that he is eligible to receive an EAJA award, he has done so by stating his net worth was under the requisite limit at the time the appeal was filed and by referencing a favorable in forma pauperis ruling. *See id.* As to the requirement 3, that the appellant provide an itemized list of hours spent by the appellant's attorney in preparing the merits portion of this case and expenses so incurred, the appellant's application contains such a list. *See id.* at 310. Finally, as to require-

ment 4, that the appellant *allege* that the government's position is not substantially justified, the appellant's application makes such an allegation. *See id.*

The Court notes that once the appellant has satisfied requirement 4, the burden shifts to the Secretary to prove substantial justification. *Id.* at 309 (citing cases). Although in the settlement agreement the parties agreed that the Secretary was not confessing error on his part (Joint Motion at 2), the Secretary's response to the appellant's application explicitly does not contest the appellant's allegation (Resp. at 1, 4). Therefore, the Court has no basis for inquiring as to whether the Secretary's position was substantially justified. *See Shaw,* 10 Vet.App. at 501; *March v. Brown,* 7 Vet.App. 163, 169 (1994); *Cook v. Brown,* 6 Vet.App. 226, 237 (1994).

■ The Secretary originally asserted that special circumstances exist in this case because NIRLS had been dissolved and that, therefore, any EAJA award would be retained either by the appellant or by NVLSP, which did no work on the appellant's behalf during the merits portion of this case. In light of the affidavits submitted by the appellant that NIRLS does still exist, even though it is not currently operating, the Secretary now asserts that the appellant's application is defective because presentation of the affidavits was a jurisdictional prerequisite that necessitated presentation within 30 days after mandate and cannot be presented by amending the application after such period. The Court disagrees. Special circumstances are not referenced anywhere in 28 U.S.C. § 2412(d)(1)(B), which, as the Court held in *Bazalo,* defines the jurisdictional content requirements of a valid EAJA application. While *Grivois v. Brown,* 7 Vet.App. 100, 101 (1994), holds that a seriously defective EAJA application may not be amended out of time, *Bazalo* notes that once a proper application has been made, "timely pleadings addressing each of the requirements of EAJA may be amended or supplemented as deemed necessary by the Court or the parties." *Bazalo,* 9 Vet.App. at 310. Furthermore, plaintiffs generally are not required to anticipate and plead facts sufficient to overcome an affirmative defense. *See e.g., Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980) (plaintiff need not plead and refute defendant's qualified immunity in civil rights case); *Gustafson v. Jones,* 117 F.3d 1015, 1019 (7th Cir.1997) (plaintiff need not anticipate and refute allegation that his speech was not protected). Although the Court has not specifically held that an allegation of special circumstances is an affirmative defense, we have held that the burden is on the Secretary to raise special circumstances in his pleadings (*see Elcyzyn v. Brown,* 7 Vet.App. 170, 174–75 (1994) (stating that, because Secretary does not assert special circumstances under 28 U.S.C. § 2412(d)(1)(A), only issue in dispute is whether Secretary's position was substantially justified)) and to prove special circumstances (*see Doria v. Brown,* 8 Vet.App. 157, 163 (1995)). Thus, an EAJA application cannot be defective for failing to anticipate and refute during the 30-day jurisdictional filing period a special-circumstances argument. The Court holds that the application is not defective.

■ Although the Secretary appears now to assert special circumstances based only upon a defective application, we will assume that the Secretary generally is asserting the existence of special circumstances which make it inequitable to grant an award. The Court will consider such circumstances as they relate specifically to work 1–4, delineated above. In this regard, the Court notes the line of precedent the Secretary cites for the proposition that EAJA awards should not become a windfall for persons other than the attorney or organization representing the plaintiff in an action against the federal government. *See, e.g., Kay v. Ehrler,* 499 U.S. 432, 437–38, 111 S.Ct. 1435, 1437–38, 113 L.Ed.2d 486 (1991) (holding that pro se litigant may not receive attorney fees under 42 U.S.C. § 1988); *March,* 7 Vet.App. at 168 (holding that pro se litigant may not receive attorney fees under EAJA); *Hairston v. R & R Apartments,* 510 F.2d 1090, 1093 (7th Cir. 1975) (holding that to avoid a windfall to plaintiff represented on pro bono basis, "the grant of fees should go directly to the organization providing the services." (citing cases)). *But cf. Venegas v. Mitchell,* 495 U.S. 82, 88, 110 S.Ct. 1679, 1683, 109 L.Ed.2d 74 (1990)

(under attorney fees provisions of 42 U.S.C. § 1988, "statutory award of fees can coexist with private fee arrangements").

As to work 1, the Court first notes that it would not be a windfall for NIRLS to receive an EAJA award for work it did during the merits litigation. The Secretary has cited no precedent, and the Court is aware of none, that suggests that NIRLS' limited operating situation precludes its receipt of an EAJA award, nor does the Secretary offer an explanation as to why such an award would be unjust. This does not end the inquiry, however, as to any NIRLS receipt of an award. NIRLS, through its attorneys, is no longer representing the appellant, thus raising the question of whether NVLSP can file an EAJA application on behalf of another. *Shaw* controls the answer. Because "the law gives the EAJA cause of action and standing to the client, not the attorney," *Shaw*, 10 Vet.App. at 506, it does not matter which attorney files an EAJA application, so long as an appearance by that attorney was properly filed prior to such filing, *cf. McNeely, supra.* In this case, we have contemporaneous filings indicating that Ms. McCarthy was withdrawing as the appellant's counsel, that Mr. Stichman was making an appearance as the appellant's new counsel, and that the appellant consented to this substitution. Therefore, Mr. Stichman was empowered to file an EAJA application on the appellant's behalf. This is not to say, however, that a successor attorney could *retain* an EAJA award based upon work done by a predecessor attorney. *See Hairston, supra.* That is an issue, based upon the appellant's uncontested, sworn affidavits, which is not presented here. Therefore, the Court will grant the application as it pertains to work 1.

■ As to works 2–4, the Secretary argues that certain hours claimed in the EAJA application are duplicative and that the 13.5 hours claimed for NVLSP's work in preparing the EAJA application are excessive in light of the number of EAJA applications NVLSP files and their boilerplate nature. As to work 2 and 3, however, the Court must deny the application for another reason. In examining the fees requested by NVLSP lawyers as to such work, the Court must begin with *McNeely*, which recognizes the principle that, in litigation, an attorney's actions are relevant only insofar as they are on behalf of a client represented by that attorney. From this proposition, *McNeely* concludes that papers filed by an attorney, including EAJA applications, are without effect if the attorney has not previously filed an appearance with the Court formally announcing the attorney's relationship with the appellant. A corresponding principle is that only work done by an attorney on behalf of a *client* can be the subject of an EAJA award. *See Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534, 538 (5th Cir.1970) (in order to grant an EAJA application "what ... is required is the existence of a relationship of attorney and client"). At the risk of redundancy, we shall restate these two rules. First, an EAJA application is not valid and cannot be recognized by the Court if the attorney filing it has not filed an appearance with the Court. *See McNeely, supra.* Second, work done by an attorney is compensable under the EAJA only if the attorney has been empowered by an agreement—which creates an attorney-client relationship—to do work on behalf of the appellant.

■ In this case Mr. Stichman filed an appearance as the appellant's attorney before he filed an EAJA application on the appellant's behalf, thereby satisfying the first rule. However, the consent form signed by the appellant makes clear that Mr. Stichman was *substituted* for Ms. McCarthy *effective February 28, 1997.* As to the second rule, there was no attorney-client relationship that empowered Mr. Stichman or NVLSP to do work on behalf of the appellant before February 28, 1997. Consequently, because no attorney-client relationship existed between the appellant and NVLSP before February 28, 1997, any work that NVLSP did on the appellant's case before that date is not compensable, whereas any work done thereafter may be the subject of an EAJA award. The request for 2.5 hours spent by NVLSP attorneys consulting with Ms. McCarthy during the merits litigation (work 2) must be denied, as well as 4.5 hours spent preparing the EAJA application (work 3), because both work 2 and work 3 predated

the existence of an attorney-client relationship. *See Miller, supra.* As to the 9 hours spent on or after February 28, 1997, by NVLSP lawyers preparing the EAJA application (work 4), we find that 9 hours to prepare an EAJA application is not excessive in this case considering that NVLSP did not represent the appellant in the merits of this litigation. Therefore, the Court will grant the application as it pertains to work 4.

## IV. CONCLUSION

Upon consideration of the foregoing analysis and the pleadings of the parties, the stay entered on December 10, 1997, is dissolved and the appellant's application for reasonable attorney fees and expenses under the EAJA is GRANTED in an amount of $16,936.44. The application is otherwise DENIED.